UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
CHRISTI LEE JIMENEZ,

               Plaintiff,               <u>MEMORANDUM & ORDER</u>
                                         21-CV-2472 (JS)(AYS)

    -against-

HOLBROOK PLASTIC PIPE SUPPLY,
INC.; and CAROLYN OLSEN,

               Defendants.
--------------------------------X

APPEARANCES
For Plaintiff:        Matt Crotty, Esq.
                  Riverside NW Law Group, PLLC
                  905 West Riverside Avenue, Suite 208
                  Spokane, Washington 99201

                  Michael Joseph Scimone, Esq.
                  Outten & Golden LLP
                  685 Third Avenue, 25th Floor
                  New York, New York 10017

                  Thomas Jarrard, Esq.
                  The Law Office of Thomas G. Jarrard
                  1020 North Washington Street
                  Spokane, Washington 99201

For Defendants:       Richard T. Cordano, Esq.
                  Colleen F. Dowd, Esq.
                  Russo, Karl, Widmaier & Cordano PLLC
                  400 Townline Road, Suite 170
                  Happauge, New York 11788

SEYBERT, District Judge:

        On May 4, 2021, Plaintiff Christi Lee Jimenez (hereafter, "Plaintiff" or "Jimenez") commenced this action against Holbrook Plastic Pipe Supply, Inc. (hereafter, "HPPS") pursuant to the Uniformed Services Employment and Reemployment

Rights Act, 38 U.S.C. § 4312, (hereafter, "USERRA") alleging: (1) HPPS failed to reemploy her in accordance with the statute upon her discharge from the armed services; and (2) the discharge was willful such that she is entitled to liquidated damages. (See generally, Compl., ECF No. 1.)  On July 26, 2022, Plaintiff filed a Second Amended Complaint which added Carolyn Olsen (hereafter, "Olsen") as a Defendant. (See Am. Compl., ECF No. 33.)  Presently before the Court are Plaintiff's Motion for Partial Summary Judgment (hereafter, "Plaintiff's Motion") (ECF No. 49) and Defendants' Cross-Motion for Summary Judgment (hereafter, "Defendants' Motion") (ECF No. 53).  For the reasons that follow, Plaintiff's Motion is GRANTED in part and DENIED in part, and Defendant's Motion is DENIED in its entirety.


[Remainder of page intentionally left blank]

BACKGROUND[1]

## I.  The Parties

Defendant HPPS is a New York company in the business of selling pipes to contractors, including government contractors.

---

[1] The following facts are taken from Plaintiff's Local Rule 56.1 Statement (hereafter, "Pl's 56.1 Stmt.") (ECF No. 49-1); Defendants' Local Rule 56.1 Counterstatement (hereafter, "Defs' 56.1 Counterstmt.") (ECF No. 51-1); Defendants' Local Rule 56.1 Statement (hereafter, "Defs' 56.1 Stmt.") (ECF No. 53-16); Plaintiff's Local Rule 56.1 Counterstatement (hereafter, "Pl's 56.1 Counterstmt.") (ECF No. 54-1); Defendants' Response to Plaintiff's Local Rule 56.1 Statement of Additional Facts (hereafter, "Def's Reply 56.1 Stmt.") (ECF No. 55-1); and the declarations and exhibits submitted relative to the instant Motions (ECF Nos. 49-51, 53-54.)

Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement throughout this Order means the Court has deemed the underlying factual assertion undisputed.  Any citation to a Rule 56.1 statement incorporates by reference the documents cited within.  Where relevant, however, the Court may also cite directly to an underlying document. The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal.  See Steward v. Fashion Inst. of Tech., No. 18-CV-12297, 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record." (quoting Knight v. N.Y.C. Hous. Auth., No. 03-CV-2746, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007))); Lumbermens Mut. Cas. Co. v. Dinow, No. 06-CV-3881, 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be specifically controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything.").  "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s]." McFarlance v. Harry's Nurses Registry, No. 17-CV-6360, 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020).

(Def's 56.1 Stmt. at ¶3.)  Defendant Olsen is the sole owner of HPPS.  (<u>Id.</u> at ¶4.)  Plaintiff Jimenez was employed at HPPS from May 2009 to April 2017. (Pl's 56.1 Stmt. at ¶1, 5.)  While employed at HPPS, Jimenez's job title was "Accounts Payable" and Jimenez was responsible for, <u>inter alia</u>, managing certain accounts, processing purchase orders, checking the packing slips of purchasing orders, verifying credit card receipts, paying vendors, and receiving money.  (<u>Id.</u> at ¶2; Defs' 56.1 Stmt. ¶9.)

II.  <u>Jimenez Joins the U.S. Army</u>

        In April 2017, Jimenez informed HPPS that she was joining the U.S. Army.  (Defs' 56.1 Stmt. ¶13.)  At the time, Jimenez's base salary was $44,000 per year, which was approximately $20 per hour worked.  (<u>Id.</u> at ¶11-12.)  Jimenez served in the U.S. Army from May 2, 2017 to May 12, 2020, when she was honorably discharged for medical reasons.  (Pl's 56.1 Stmt. ¶¶7-8.)  Upon Jimenez's departure from HPPS, HPPS hired an employee to take on Jimenez's former job duties.  (Defs' 56.1 at ¶15.)

III.  <u>Jimenez Returns Upon Her Discharge from Active Duty</u>

        Jimenez was honorably discharged from active duty with the U.S. Army on May 12, 2020, due to "retirement" and "permanent disability."  (<u>Id.</u> at ¶¶ 17-18.)  Following her discharge from the armed services, Jimenez visited HPPS on at least three separate occasions between July 2020 and September 2020.  (<u>Id.</u> at ¶¶19-20).  It is undisputed that during these visits, Jimenez did not ask

4

anyone at HPPS for reemployment. (Id.; see also Pl's 56.1 Counterstmt. ¶19.)

The parties dispute, however, whether and when Jimenez made a request for reemployment at a different time. Plaintiff asserts she asked for reemployment within 90 days of May 12, 2020, the date of her discharge from the U.S. Army.[2] (Pl's 56.1 ¶10.) In particular, Plaintiff asserts she asked HPPS to reemploy her by way of the following events.

a. Jimenez Calls Olsen on July 28, 2020

First, Jimenez posits she had a telephone conversation with Olsen on July 28, 2020 whereby she informed Olsen she completed her military service and wanted to return to work. (Pl's 56.1 ¶11; see also Jimenez Dep.[3], ECF No. 50-1, at 36:12-15.) Olsen does not dispute that this call took place, and that Jimenez informed her that she wanted her job back during the call. Indeed, when asked whether at some point, Olsen had learned that Jimenez was out of the military and trying to come back to work at HPPS, Olsen testified she "remember[ed] that [Jimenez] sent [her] maybe an email or told [her] on the phone or called [her] . . . on the

---

[2] Ninety days from May 12, 2020 is August 10, 2020.

[3] The Court notes there were multiple depositions taken by the parties in this matter, which were filed by the parties as exhibits to the instant Motions using distinct identifiers. For clarity, the Court refers to deposition transcripts by abbreviated name and ECF number as they appear on the docket.

28th of July." (Olsen Dep II, ECF No. 51-6, at 124:18-125:4.) According to Jimenez, during the July 28, 2020 phone call, Olsen told her that she "wasn't going to give [Jimenez]" her "old job back", but "might have another position for [her] and [Olsen] would like to talk about it over lunch." (Jimenez Dep., ECF No. 50-2, at 29:5-17; 30:23-31:3.)

      b. <u>Jimenez and Olsen Meet for Lunch</u>

Second, Jimenez asserts she met with Olsen for said lunch sometime between July 28, 2020 and August 5, 2020. (Pl's 56.1 at ¶17.) According to Jimenez, Olsen discussed a potential job at HPPS "[f]or a brief second," but when Jimenez stated she had questions about the job, Olsen "changed the subject and [they] never got to talk about [it]." (Jimenez Dep., ECF No. 50-2, at 33:13-25.) Jimenez further testified that Olsen told her to "e-mail [her] all of the questions that [Jimenez]" had about the potential new job. (<u>Id</u>. at 35:22-25.)

While Defendants agree Jimenez and Olsen met for lunch, they dispute the date and content of the lunch conversation as recalled by Jimenez. (Def's 56.1 Counterstmt. ¶17.) As to the date, Defendants contend the lunch meeting occurred on a weekday at the end of September 2020.[4] (<u>Id.</u>; <u>see also</u> Defs' Ex. 7, ECF

---

[4] Defendants contend the lunch occurred on either September 12, 2020 or September 30, 2020 based upon Olsen's credit card statements. (Defs' 56.1 Stmt. at ¶23.) Plaintiff recalls Olsen paying for the lunch with cash. (Pl's 56.1 Counterstmt. at ¶23.)

No. 51-9; Olsen Dep II, ECF No. 51-6, at 83:1-3.)  Additionally, Defendants have a drastically different account of what happened at the lunch; in particular, Olsen testified: (1) she offered Jimenez an opportunity to return to work at HPPS in a different role than she previously occupied (see Olsen Dep. II, ECF No. 51-6, at 83:4-12); (2) the job offered to Jimenez was a "CDI" position, which, in short, would require Jimenez to find jobs for salespeople at HPPS to bid upon (id. at 81:3-82:7); (3) Jimenez was "not really responding" to Olsen's job offer and description, so Olsen told her to go home and think about the offer and give her a call the next day (Olsen Dep. II, ECF No. 51-6, at 84:9-25); and (4) in response to Olsen's offer, Jimenez stated she could not "come back to work" because she was "under a doctor's care," "taking medicine", and doing "rehab[ilitation]" (Olsen Dep. II, ECF No. 51-6, at 85:2-7); and (5) Olsen, understanding Jimenez's physical condition, and noting that Jimenez was limping, told Jimenez if she wanted the job, Jimenez could reach out to Olsen when she "was ready" to "go over everything again." (Olsen Dep. II, ECF No. 51-6, at 85:3-16.)

c. Jimenez Sends Olsen an Email on August 6, 2020

Third, Jimenez testified she sent Olsen an email following their lunch, dated August 6, 2020. In the email, Jimenez apologized for the "delay," requested job details about the purported new job offered to her by Olsen, requested a $30 per hour salary, asked for time off on certain federal holidays, and asked about the expected protocol regarding vacation time. (Jimenez Dep. I, ECF No. 51-3, at 36:4-23; email attached to Jimenez Dep., ECF No. 50-1, at 30.) There is no dispute that this email was sent from Jimenez to Olsen at the correct email address. (Pl's 56.1 at ¶24.)

d. Jimenez and Olsen Speak on September 26, 2020

Fourth, Jimenez testified that on September 26, 2020, Olsen called her by accident, mistakenly believing Jimenez was her "carpet guy." (Jimenez Dep I, ECF No. 51-3, at 40:17-41:18.)[5] Jimenez believed Olsen's tone was "very nasty" and decided to record the call. (Id. at 41:4-21.) During the phone call, Olsen told Jimenez several times that she could not hire Jimenez, or any

---

[5] The Court notes the deposition transcript mistakenly states that the phone call occurred on September 6, 2020. It is unclear whether this was a misstatement on the part of counsel or a scrivener's error. In any event, it is undisputed that said phone call occurred on September 26, 2020. (See Def's 56.1 Counterstmt. ¶32; see also Crotty Delc., Ex. C, ECF No. 49-5.)

one else, "right now."  (Pl's 56.1 Stmt. at ¶35; see also Crotty

Delc. Ex. C, ECF No. 49-5, in toto.)[6]

   e. The September 30, 2020 Certified Letter

      Fifth, on September 30, 2020, Jimenez sent a certified

letter to Olsen and HPPS requesting reemployment.  (Pl's 56.1 Stmt.

at ¶46.)  The certified letter included a copy of New York law,

---

[6] Relevant excerpts of the transcript of the September 26, 2020
call between Jimenez and Olsen are as follows:

> **Ms. Jimenez:** I said, I just want to
> understand correctly that you're not hiring
> me right now?
>
> **Ms. Olsen:** No, I can't right now. That's
> what I'm trying to tell you. It's not your
> fault and nothing to do with you.

(Crotty Delc., Ex. C, ECF No. 49-5, at 2:5-10.)

> **Ms. Olsen:** . . . so as I said, I can't hire
> you now, okay? I'm sorry.

(Id. at 4:18-19.)

> **Ms. Olsen:** . . .I'm sorry that I can't hire
> you at this point.

(Id. at 5:19-20.)

> **Ms. Olsen:** It's just that I'm not ready to
> hire anybody right now.
>
> **Ms. Jimenez:** Okay.
>
> **Ms. Olsen:** Okay. Okay. Thank you.
>
> **Ms. Jimenez:** I understand.
>
> **Ms. Olsen:** Okay. You take care. Bye-bye.

(Id. at 7:5-11.)

9

referencing the USERRA, concerning the reemployment of veterans returning from military service.  (Id. at ¶47; Jimenez Decl., Ex. D, ECF No. 49-18.)  The letter went unanswered by both Olsen and HPPS.  (Pl's 56.1 Stmt. at ¶48.)  Jimenez never returned to work at HPPS.  (Pl's 56.1 Stmt. at ¶49.)

ANALYSIS

I.   Legal Standards

A. Summary Judgment

The Court shall grant summary judgment under Rule 56(a) where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is material for the purposes of resolving a summary judgment motion "when it might affect the outcome of the suit under the governing law."  Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005)).

"The movant bears the burden of 'demonstrating the absence of a genuine issue of material fact.'"  Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The burden of persuasion may be satisfied by either: (1) submitting evidence that negates an essential element of the non-moving

10

party's claim; or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.  Id.  Once the moving party has met its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts and instead offer some hard evidence showing that its version of events is not wholly fanciful."  Stein v. County of Nassau, 417 F. Supp. 3d 191, 197 (E.D.N.Y. 2019) (citations omitted).

"Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citations and quotation marks omitted).  In reviewing the record, the court "may not make credibility determinations or weigh the evidence" as such determinations are to be made by the jury, not the judge.  Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)).  Accordingly, where an issue as to a material fact cannot be resolved without weighing the credibility of a witness, summary judgment is improper. Id.

Finally, courts employ "an extra measure of caution" before "granting or affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare." Moll v. Telesector Res. Grp., Inc., No. 20-CV-3599, 2024 WL 820179, at *4-5 (2d Cir. Feb. 28, 2024) (citing Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001), abrogated in part on

other grounds by Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009)). "Thus, the court must scrutinize affidavits and depositions carefully for circumstantial evidence that, if credited by the factfinder, could reasonably be interpreted as showing discrimination." Id.

### B. Discrimination and Failure to Reemploy Under USERRA

The USERRA was enacted to protect military service members from "disadvantages to their civilian careers [that may occur] as a result of such [military] service." Woodard v. N.Y. Health & Hosps. Corp., 554 F. Supp. 2d 329, 347 (E.D.N.Y. 2008), aff'd in part, remanded in part, 350 F. App'x 586 (2d Cir. 2009) (quoting Curby v. Archon, 216 F.3d. 549, 556 (6th Cir. 2000)). Under the USERRA, persons serving in the U.S. military shall be "promptly reemployed in a position of employment" in which "the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such" military service, or, alternatively, in a position "of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C.A. § 4313(a)(2)(A). To take advantage of employment protections afforded by the USERRA, any person who served in the U.S. military for a period longer than 180 days must submit "an application for reemployment with the employer no[] later than 90 days after the completion of the period of service." 38 U.S.C. § 4312(e)(1)(D). Such application "need

not follow any particular format" so long as it places the employer on notice of his or her claim to reemployment.  Serricchio v. Wachovia Sec. LLC, 658 F.3d 169, 180 (2d Cir. 2011) (citing 20 C.F.R. § 1002.118).  Further, an "employee is permitted but not required to identify a particular reemployment position in which he or she is interested."  Id.

Employment protections offered to former service members are to be "liberally construed for the benefit of those who left private life to serve their country."  Serricchio v. Wachovia Sec., LLC, 556 F. Supp. 2d 99, 104 (D. Conn. 2008), aff'd, 658 F.3d 169 (2d Cir. 2011) (quoting Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285 (1946)).  Indeed,

> the Second Circuit has held that where a returning servicemember's application for reemployment puts the employer on "ample notice of his claim" to reemployment, "technical failure[s]" in the form of the application which do not prejudice the employer will not prevent USERRA's rehiring mandate from binding the employer.

Id. at 105 (quoting Martin v. Roosevelt Hosp., 426 F.2d 155, 159 (2d Cir. 1970)); see also Serricchio, 658 F.3d at 180.

However, such liberal construction of the USERRA's application requirement is not without limitations.  Serricchio, 556 F. Supp. at 105 ("[T]here are limits to the liberality with which USERRA is to be applied when determining whether a plaintiff has properly applied for reinstatement.").  If a returning

13

servicemember makes only a casual or cursory request for reemployment without further follow-up with the appropriate hiring personnel, such request may not be deemed a viable reemployment application.  See McGuire v. United Parcel Serv., 152 F.3d 673, 678 (7th Cir. 1998).  Moreover, if a returning servicemember makes a request for reemployment that is conditional, that is, contingent upon some other event or term, such request is not considered an "application" for the purposes of the USERRA.  See, e.g., Baron v. U.S. Steel Corp., 649 F. Supp. 537, 541–42 (N.D. Ind. 1986) (denying USERRA claim where former employee informed his employer that he wanted his job back if he did not get accepted to college).  In analyzing a purported conditional request for reemployment, the Second Circuit has made clear that a request for higher pay or position upon return from the U.S. military is not necessarily a "conditional" request which fails to suffice as a proper request for reemployment under the statute.  See Martin, 426 F.2d at 159 (concluding plaintiff's request for a position he was not entitled to amounted to a request for reemployment because the request did "not suggest [plaintiff] was no longer interested in the [original position] if that was the best he could get"); see also Serricchio, 658 F.3d at 180 ("[In Martin] we rejected the claim that Martin's second round of communications did not constitute a demand for reinstatement simply because [he] requested a position to which he was not entitled to under the [USERRA]").

14

C. <u>Willful Violations of the USERRA</u>

"If the Court determines that the employer's failure to comply with the provisions of [the USERRA] was willful," the Court "may require the employer to pay the [plaintiff] an amount equal to" compensatory damages as liquidated damages. 38 U.S.C. § 4323(d)(1)(C). "[W]hether a litigant was at fault or acted willfully or in bad faith are questions of fact." <u>Serricchio</u>, 658 F.3d at 191 (citing <u>Agiwal v. Mid Island Mortg. Corp.</u>, 555 F.3d 298, 302 (2d Cir. 2009) (alterations in original)). Where an employer "acts reasonably in determining its legal obligation, its action cannot be deemed willful." <u>Id.</u> (citing <u>McLauglin v. Richland Shoe Co.</u>, 486 U.S. 128, 135 n.13 (1988)). Willfulness in this context is akin to recklessness, and "where an employer acts unreasonably, but not recklessly" such conduct is not considered willful. <u>Id.</u>

II. <u>Discussion</u>

A. <u>Jimenez Submitted a Timely Request for Reemployment</u>

Plaintiff argues she is entitled to partial summary judgment on her 38 U.S.C. § 4312 claim because she was discharged from the military on May 12, 2020 and requested her job back on July 28, 2020, which was well within the 90-day period in which a veteran may apply for reemployment. (Pl's Motion, ECF No. 49, at 5.) Defendant argues no such request was made in the 90-day period because although a phone call was made "on July 28, 2020 to

15

Defendant [Olsen's] home phone" such call was merely an "inquiry" and not a formal request for reemployment.  (Defs' Opp'n to Pl's Motion, ECF No. 51, at 11.)  Despite Defendants' contentions that Plaintiff's July 28, 2020 phone call was a mere "inquiry" about reemployment, the record indicates Olsen understood that Plaintiff wanted her job back either based upon their conversation on that date or based upon a later email sent by Plaintiff.[7]  Such understanding is sufficient to establish that a reemployment request has been timely made under the USERRA.  Indeed, the Second Circuit does not require a returning veteran to submit a perfect formal job application in order to request reemployment; rather, where it is clear the employer received "ample notice" of the returning veteran's request for reemployment within the statutory

---

[7] In her deposition, Olsen testified she was aware of Plaintiff's request for reemployment within the statutory time period.  (Olsen Dep. II, ECF No. 51-6, at 124:18-125:4) ("I just remember that she sent me maybe an email or told me on the phone or called me about the – on the 28th of July, something on a phone call on the 28th of July that I think it was – I'd have to look. I have – I think I have something on that but I think it has something to do with her job. I would imagine it would be her job.").

The Court finds the email Olsen references in the aforementioned testimony is the August 6, 2020 email sent from Plaintiff to Olsen, which would have been sent within the 90-day time frame set by the statute.  While Defendants attempt to create an issue of fact as to whether the August 6, 2020 email was a timely request for reemployment, asserting Plaintiff knew that Olsen did not receive said email (see Defs' 56.1 Counterstmt., ECF No. 51-1, at ¶20), the deposition testimony cited by Defendants does not support such assertion.  (Id.)  Moreover, regardless of such purported dispute, the record makes clear Olsen understood Jimenez requested her job back and did so within the 90-day deadline of August 10, 2020.

period, such request is deemed sufficiently compliant with the statute.  See Serricchio, 658 F.3d at 180.  Accordingly, the Court finds, as a matter of law, that Plaintiff requested reemployment within the statutory time period.

> B. Jimenez's Request for Increased Salary Did Not Render Her Application "Conditional"

In addition to concluding Jimenez's application for reemployment was procedurally compliant, i.e., she placed her former employer on notice of her claim to reemployment within the 90-day statutory period, the Court concludes, as a matter of law, that Jimenez's request for a salary "in th[e] area" of $30 an hour was not a conditional request for employment that would absolve Defendants of their obligations under the USERRA.  (Email attached to Jimenez Dep., ECF No. 50-1, at 30.); see Serricchio, 658 F.3d at 180 (noting the Second Circuit previously rejected the claim that a plaintiff is not entitled to reinstatement of his job position "simply because [he] requested a position to which he was not entitled to under the [USERRA]").  This is especially true considering Jimenez was making approximately $20 an hour at HPPS at the time she left for the miliary (see Defs' 56.1 Stmt. ¶13), and where Jimenez's specific request was for a salary "in th[e] area" of $30 per hour.  (Email attached to Jimenez Dep., ECF No. 50-1, at 30).  By her own words, Jimenez indicated she was not conditioning her request for reemployment upon a "hard" demand for

$30, but rather, implied she was willing to work for less.  This presents a scenario similar to that of the plaintiff in Martin, whereby the Second Circuit rejected defendants' claim that plaintiff's request for reemployment was conditional where there was no evidence plaintiff "was no longer interested in [a lower-level] position if that was the best he could get."  Martin, 426 F.2d at 159.  So too here.

C. Ms. Olsen's Purported Offer of an Alternative Job Position is Insufficient to Establish Compliance with the USERRA

Having found Plaintiff made a timely and proper request for reemployment under the USERRA, the Court now to turns to Defendants' alleged defense that they offered Plaintiff reemployment by way of an alternate position at HPPS.  The Court finds, as a matter of law, Defendants did not comply with their obligations under the USERRA because either: (1) the offer of an alternate employment position was made by Olsen and then rescinded during the September 26, 2020 phone call between the parties; or (2) the offer of an alternate employment position was not made "promptly" under the USERRA because it was made on September 30, 2020, following Olsen's blatant denial of Plaintiff's request for reemployment and more than 60 days after Plaintiff's initial application for reemployment.

The USERRA requires employers, like HPPS, to "promptly" reemploy returning service members upon their request. 38 U.S.C. § 4313(a). While the USERRA does not specify the number of days in which an employer must re-instate a qualified veteran in order to comply with the "promptness" requirement, such promptness requirement has been interpreted to require reemployment action within 14 days. See 20 C.F.R. § 1002.181; see also Ozorowsky v. Bayfront HMA Healthcare Holdings, LLC, No. 20-CV-2564, 2022 WL 445500, at *3 (M.D. Fla. Feb. 14, 2022) ("Absent unusual circumstances, reemployment must occur within two weeks of the employee's application for reemployment.") (emphasis in original); Harwood v. Am. Airlines Inc., No. 17-CV-484, 2017 WL 11318161, at *8 (E.D. Va. Aug. 9, 2017), aff'd, 963 F.3d 408 (4th Cir. 2020)(same).

Based upon the facts posited by the parties, two potential timelines exist concerning Jimenez's request for reemployment, both of which evidence Defendants' non-compliance with the "prompt" reemployment requirements of the USERRA. Plaintiff's recollection of the timeline of events, corroborated by documents and testimony, is as follows: (1) Plaintiff spoke on the phone with Olsen on July 28, 2020 whereby Plaintiff requested reemployment; (2) Olsen and Plaintiff met for lunch where Olsen told Plaintiff about an alternate job position; (3) when Plaintiff

followed up on that job position via email on August 6, 2020, such email went unanswered; and (4) on September 26, 2020, Olsen called Plaintiff and told her, in no uncertain terms, that she would not be re-hired at HPPS.  (See supra Background.)  Alternatively, Defendants' recollection of the timeline of events, based upon documents and testimony, is as follows: (1) Plaintiff spoke on the phone with Olsen on July 28, 2020; (2) Plaintiff sent an email to Olsen on August 6, 2020, which Olsen did not receive; (3) Olsen mistakenly called Plaintiff on September 26, 2020, informing Plaintiff, in no uncertain terms, that she would not be re-hired at HPPS; and (4) Plaintiff and Olsen met for lunch either on September 12, 2020 or September 30, 2020, whereby Olsen offered Plaintiff a different job position at HPPS.  (See id.)

There is no dispute that Olsen was made aware of Plaintiff's request for reemployment either on July 28, 2020 or August 6, 2020.  (Olsen Dep. II, ECF No. 51-6, at 124:18-125:4) ("I just remember that she sent me maybe an email or told me on the phone or called me about the – on the 28th of July, something on a phone call on the 28th of July that I think it was – I'd have to look. I have – I think I have something on that but I think it has something to do with her job. I would imagine it would be her job.").  It is similarly undisputed that Olsen called Jimenez on September 26, 2020 and informed her that she would not be

reemployed at HPPS.  See supra n.3.  Defendants allege Plaintiff met with Olsen at some point in September 2020, either on September 12, 2020, or September 30, 2020, based solely upon Olsen's credit card statements, at which time Olsen offered Plaintiff an alternative job position at HPPS.  (Def's 56.1 Stmt. ¶¶ 23-24.) Accepting, for sake of arguendo, that the lunch meeting occurred on September 12, 2020 and Olsen did offer Plaintiff a job, any such offer was clearly rescinded by way of the September 26, 2020 phone call among the parties.  Alternatively, accepting for sake of arguendo that the lunch meeting occurred on September 30, 2020, notwithstanding Defendants have offered no explanation as to how that meeting would have come to be following the September 26, 2020 phone call, any such job offer made on that date, which would have been 55 to 64 days after Plaintiff requested reemployment, could not have complied with the "prompt" reemployment required by the USERRA.  38 U.S.C. § 4313(a); 20 C.F.R. § 1002.181.

Therefore, the Court finds Plaintiff met all requirements for reemployment under the USERRA and Defendants failed to comply with the statute by not promptly offering Plaintiff either her former position or a like position. Accordingly, Plaintiff's Motion for Partial Summary Judgment is GRANTED insofar as it seeks a finding that Defendants failed to

reemploy Plaintiff in accordance with the USERRA.[8]  Consequently, and for the same reasons, Defendants' Motion for Summary Judgment is DENIED.

        D. <u>A Genuine Dispute of Material Facts Exists as to Plaintiff's Liquidated Damages Claim</u>

As discussed <u>supra</u>, "[i]f the Court determines that the employer's failure to comply with the provisions of [the USERRA] was willful," the Court "may require the employer to pay the [plaintiff] an amount equal to" compensatory damages as liquidated damages.  38 U.S.C. § 4323(d)(1)(C).  "[W]hether a litigant was at fault or acted willfully or in bad faith are questions of fact." <u>Serricchio</u>, 658 F.3d at 191 (citing <u>Agiwal</u>, 555 F.3d at 302) (alterations in original).  Where an employer "acts reasonably in determining its legal obligation, its action cannot be deemed willful."  <u>Id.</u> (citing <u>McLauglin v. Richland Shoe Co.</u>, 486 U.S. 128, 135 n.13 (1988)).  Willfulness in this context is akin to recklessness, and "where an employer acts unreasonably, but not recklessly" such conduct is not considered willful.  <u>Id.</u>

---

[8] For the avoidance of doubt, the Court has reviewed the parties' respective submissions concerning Defendants' affirmative defenses.  For the reasons stated herein, Plaintiff's Motion for Summary Judgment insofar as it seeks dismissal of Defendants' Affirmative Defenses 1-5 and 7-15 is GRANTED.  The Court finds, however, Defendants' Sixth Affirmative Defense (for failure to mitigate) to be viable and such Defense may be raised during the forthcoming trial on damages.

Here, there are material factual disputes which preclude a determination of whether Defendants' violation of the USERRA was "willful." For example, there is evidence that Defendant offered, or was contemplating offering, Plaintiff an alternative job position upon her discharge from the military, which suggests Defendants' good-faith attempt to comply with the statute. See, e.g. Jimenez Dep., ECF No. 50-2, at 33:13-25 (noting Olsen discussed a potential different job at HPPS that Jimenez could do). In contrast, Defendants admit Olsen was told by another employee of HPPS that she was legally obligated to reemploy Jimenez, and as the Court has concluded, Olsen did not do so. (See, e.g., Defs' 56.1 Counterstmt. at ¶16). Based upon these alleged facts, and the fact-intensive inquiry required to determine whether an employer's violation of the USERRA was "willful," the Court finds a dispute of fact exists as to whether Defendants willfully violated the USERRA. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's liquidated damages claim is DENIED.

[Remainder of page intentionally left blank]

<u>CONCLUSION</u>

For the stated reasons, it is HEREBY ORDERED:

I.   Plaintiff's Motion for Summary Judgment (ECF No. 49) is GRANTED insofar as it seeks:

(1)   a finding that Defendants violated 38 U.S.C. § 4312, <u>et seq.</u> for failure to reemploy her upon her discharge from the U.S. Military; and

(2)   dismissal of Defendants' Affirmative Defenses 1-5 and 7-15;

II.  Defendants' Cross-Motion for Summary Judgement is DENIED in its entirety;

III. In light of the foregoing, by no later than <u>January 21, 2025</u>, the parties shall submit a joint letter to the Court stating:

(1)   whether they wish to attend mediation on damages;

(2)   whether they wish to attend a settlement conference before Magistrate Judge Lindsay on damages; or

(3)   if they are not interested in participating in mediation or a settlement conference, their availability for a trial on damages in summer 2025.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: December 19, 2024
       Central Islip, New York